HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.

674 P.2d 1368

STATE of Arizona, Appellee,

v.

Luis CRUZ–MATA, aka Bobby Eugene Saylor, Appellant.

No. 5717.

Supreme Court of Arizona, En Banc.

Dec. 2, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by H. Allen Gerhardt, Jr., Deputy Public Defender, Phoenix, for appellant.

HAYS, Justice.

Luis Cruz-Mata was tried and convicted of first degree felony murder (Count I), A.R.S. § 13–1105(A)(2) and armed robbery (Count II), A.R.S. § 13–1904. (Appellant was tried under the name of Bobby Saylor, but he admitted to the name of Luis Cruz-Mata at sentencing.) He was sentenced to life imprisonment on the murder charge and to 10½ years on the robbery charge with 260 days credit for presentence custody on the robbery charge. The sentences are to run concurrently. We have jurisdiction of the appeal pursuant to Ariz. Const. art. 6, § 5 and A.R.S. § 13–4031.

The record of this case reveals that on May 22, 1981 appellant was introduced to the victim, Alfred Romero, by his accomplices, Juan Montes (who is also known as "Malacho") and Antonio Sapien, while all four men were at the Tivoli bar in downtown Phoenix. Appellant was an acquaintance of Montes but had never seen Sapien before. Appellant testified that he knew that Montes stole cars.

As appellant was about to make arrangements for a taxi, he was told by Montes that Romero would drive appellant, Montes, and Sapien to their respective houses. The first stop, however, was the house of Montes' girlfriend, who refused to let anyone in the house. The men then drove to

Sapien's house. While there Sapien and Montes called appellant into the bathroom. They told appellant that they planned to rob Romero and steal his car. Appellant agreed to the plan.

Once in the car again, Montes pulled a knife, which he had taken from Sapien's house. Appellant then grabbed Romero's arms while they were being tied. Montes then drove to the area of 48th Avenue and Elliott. Romero was taken out of the car and robbed.

Romero attempted to run away but was caught by Sapien. Sapien repeatedly stabbed Romero until his knife broke. Sapien then asked for Montes' knife and he continued to stab Romero.

Appellant helped Sapien move the body to a more concealed, nearby spot. Sapien then struck the body with rocks, and mutilated the body with a knife. The three men then drove away in Romero's car.

Appellant's defense at trial was that he did not plan the crimes and his participation was secured by duress. He testified that Sapien displayed a knife while he was in the bathroom with Sapien and Montes. No direct threats were made against him, but he testified that it was clear to him that he would be attacked if he refused to help. He testified that when Romero was taken out of the car he asked Sapien and Montes not to hurt Romero.

### MIRANDA ISSUE

Appellant raises the question whether the detective investigating the matter failed to timely advise him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Detective Rufino Dominguez, who testified at the voluntariness hearing and trial, was in charge of the investigation concerning Romero's death. He went to the hotel where appellant worked in order to talk with him. He waited forty-five minutes for appellant to finish his shift. The detective asked appellant to accompany him to the police station for questioning. Appellant agreed. They travelled in an unmarked

police car, which had a two-way radio as its only indicia of police ownership. Appellant was not searched, and the only time appellant saw the detective's gun was when the detective was locking it in his desk drawer. The interview began at approximately 4:40 p.m. and ended at 6:07 p.m. The two men were alone throughout the questioning, and it was conducted primarily in Spanish, appellant's native tongue.

The detective told appellant the following: a 1960 Ford Fairlane (Romero's car) had been in an accident and that Detective Dominguez suspected appellant's friend, Malacho, of the theft; appellant was seen in the car with other suspects; it was believed that appellant had talked about the homicide; appellant was seen with blood on his clothes on the night of the homicide; and Malacho had mentioned that "Chapparo" had been a participant in the crime. He also showed appellant a picture of a lineup that included Malacho.

The detective testified that appellant stated, "I ran over a dog and that's how I got blood on my clothes." Appellant later said that he was known as Chapparo. Finally, appellant said that he knew something about the murder. After this final comment the detective stopped appellant and administered *Miranda* warnings to appellant.

■ Appellant confessed to the crime. He claims that his confession was involuntary as it was the direct result of custodial interrogation for which he had not received his *Miranda* warnings.

While the interview amounted to interrogation, *see Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), it was not custodial interrogation. We find that the recent United States Supreme Court decision in *California v. Beheler,* —— U.S. ——, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), is applicable and controlling. The Court said:

Although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody" for purposes of receiving of [sic] *Miranda* protection, the ultimate inquiry is

simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.

*Id.* at ———————, 103 S.Ct. at 3519–20.

The Court stated that an individual is not in custody for purposes of *Miranda* warnings simply because the interview takes place in a police station, or the defendant is a suspect in the case. The Court also discussed *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), and reiterated that in *Mathiason* "[t]he officer also falsely informed Mathiason that his fingerprints were found at the scene of the crime." *Beheler, supra,* —— U.S. at ——, 103 S.Ct. at 3519. This indicates that confronting an accused with evidence of guilt does not necessarily require administering *Miranda* warnings. The Court also noted that any interview by the police of an individual suspected of a crime " 'will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause a suspect to be charged with a crime.' " *Id.,* quoting *Mathiason, supra.* Thus, the focus is not whether a defendant felt he or she was in custody.

█ Because the circumstances of each case will influence a determination of whether an individual is "in custody" for purposes of administering *Miranda* warnings, objective indicia of custody must be considered. In *State v. Kennedy,* 116 Ariz. 566, 569, 570 P.2d 508, 511 (App.1977), the court of appeals listed four factors, three of which we approve, to consider in making the determination of whether an individual is in custody. These three factors are: the site of the questioning; whether objective indicia of arrest are present; and the length and form of the interrogation. We also will consider the method used to summon the individual. *See United States v. Bautista,* 684 F.2d 1286, 1292 (9th Cir.1982).

█ Turning to the facts of the instant case, the site of the interview was a police station. Although a police station may be considered a "coercive environment," *see Mathiason, supra,* 429 U.S. at 495, 97 S.Ct. at 714, without more, the fact that questioning was conducted in a police station does not require that *Miranda* warnings be administered. *See id.* at 495, 97 S.Ct. at 714. After reviewing the record, we do not find that the site of this questioning significantly contributes to a finding that there was a restraint on appellant's freedom of movement of the degree associated with a formal arrest.

█ We find that objective indicia of arrest are not present. Defendant was not subjected to the booking process, nor were physical restraints such as handcuffs used, nor was a weapon drawn. The total length of the interview (including *pre-Miranda* questions and *post-Miranda* questions) was about 1½ hours. Detective Dominguez testified that no force, threats or other compulsion was used to obtain appellant's responses. Moreover, the interview was conducted in Spanish, except for the taped confession. Finally, appellant was asked by Detective Dominguez to accompany him to the police station and appellant rode in the front seat of an unmarked police car.

Based on these facts, we cannot say that the trial court's ruling constitutes clear and manifest error. *See State v. Garrison,* 120 Ariz. 255, 257, 585 P.2d 563, 565 (1978). We affirm the ruling of the trial court on the *Miranda* issue.

## INTOXICATION INSTRUCTION

█ Appellant claims that the trial court erred by not giving, *sua sponte,* an instruction on intoxication which would allow the jury to find that appellant lacked the specific intent to rob. Alternatively, appellant claims that he was denied effective assistance of counsel because his trial lawyer did not ask for an intoxication instruction. Appellant now believes that intoxication was essentially his sole defense.

Before either of these issues need be addressed, the record must be found to support such an instruction. In other words, if the facts of the case do not support the giving of this instruction, it cannot have been error on the court's part to fail to give

374

this instruction *sua sponte,* or ineffectiveness of representation on defense counsel's part to have failed to request this instruction.

This court has stated that when an individual claims to have been intoxicated, but remembers the events during that time with great detail, this indicates that an intoxication instruction is unwarranted. *See State v. Boyles,* 112 Ariz. 63–64, 537 P.2d 933–34 (1975); *State v. Kruchten,* 101 Ariz. 186, 196, 417 P.2d 510, 520 (1966) (construing 17 A.R.S. § 13–132, now 17 A.R.S. § 13–503); *State v. Roqueni,* 94 Ariz. 72, 74–75, 381 P.2d 757, 759–60 (1963); *Rascon v. State,* 47 Ariz. 501, 513–16, 57 P.2d 304, 309–10 (1936), *overruled on other grounds, State v. Wright,* 103 Ariz. 52, 436 P.2d 601 (1968).

In this case appellant, according to his own testimony, remembers: 1) that he was at the Tivoli bar at 1:00 a.m. and he was going to ask a barmaid to call a cab for him but that Montes said Romero would give appellant, Montes, and Sapien rides home; 2) appellant accepted because Romero "didn't look like a thief"; 3) their first destination was Montes' girlfriend's house. She would not let Montes in (she called Montes "Juan"); 4) the next stop was Sapien's house where appellant was called into the bathroom by Montes and Sapien and informed of the plot to rob Romero; 5) he grabbed Romero's hands while Montes held a knife to Romero's right side; 6) after driving to a desert area, Romero was forced out of the car and robbed; 7) Romero asked for a beer and Montes replied by pouring beer in Romero's face and saying this is your last beer; 8) Romero then said he was going to call the police to which Montes replied that he would not be calling anyone; 9) Romero then ran but was caught by Sapien who stabbed Romero in the back; 10) Romero then fell and Sapien continued to stab him until the knife broke; 11) Sapien then asked for Montes' knife and he continued stabbing Romero; 12) appellant helped move the body to a covered area; 13) Romero was dead because he wasn't breathing; 14) Sapien then hit the body with rocks and began to mutilate the body by cutting away parts of the genitals; 15) the three men then left in the car.

The recitation of these facts point out that appellant's mental condition was not impaired by the alcohol he consumed. We note that his testimony concerning whether he drank alcohol and the amount he drank was unrefuted, but it was also uncorroborated. An intoxication instruction on these facts would have been unwarranted. Appellant's claim is without merit.

PRESENTENCE CUSTODY

■ Finally, appellant argues that the trial judge erred when he allocated the 260 days credit for appellant's presentence custody to Count II (for which appellant received a sentence of 10½ years imprisonment) instead of Count I (for which appellant received a life sentence without possibility of parole for 25 years) and that the trial court did not comply with all of the relevant provisions of Arizona Rules of Criminal Procedure, rule 26.10(b). The state contends that the actions of the trial judge are in accordance with *State v. Wallis,* 132 Ariz. 445, 646 P.2d 876 (1982). Appellant invites us to overrule *Wallis.*

Appellant is correct in asserting that the trial judge failed to comply with Rule 26.-10(b)(2) (which provides that the trial court shall "[s]tate that it has considered the time the defendant has spent in custody on the present charge") and the second clause of Rule 26.10(b)(4) (which provides that the trial court shall compute the time to be credited against the sentence). We have said before that compliance with this rule by trial judges is mandatory. *See State v. Warde,* 116 Ariz. 598, 600–01, 570 P.2d 766, 768–69 (1977). Because of our disposition of the *Wallis* issue, *infra,* we need not remand this case based on this noncompliance.

Developments of the law in the area of credit for presentence custody have been recent. At one time, credit for presentence custody was discretionary with the trial judge. *State v. Kennedy,* 106 Ariz. 190, 193, 472 P.2d 59, 62 (1970). The Arizona Rules of Criminal Procedure, adopted in

1973, require the trial judge to consider the amount of the defendant's presentence custody. Rule 26.10(b)(2). In *State v. Sutton,* 21 Ariz.App. 550, 521 P.2d 1008 (1974), the Court of Appeals held that credit for presentence custody was mandatory for prisoners who could not make bail on bailable offenses. The holding was based on the equal protection clause of the fourteenth amendment. That holding was accepted by this court. *See State v. Warde, supra.* A.R.S. § 13–709(B), which became effective in 1978, provides: [1]

> All time actually spent in custody pursuant to an offense until the prisoner is sentenced to imprisonment for such offense shall be credited against the term of imprisonment otherwise provided for by this chapter.

The early changes in the law in this area had the effect of increasing the likelihood that credit for presentence custody would be applied against the sentence. With the passage of A.R.S. § 13–709(B), allocating that credit against the sentence became mandatory.

The proper allocation of this mandatory credit caused a split in the Court of Appeals. Division Two held that the credit could be applied only once regardless of whether the multiple sentences are concurrent or consecutive. *See State v. Williams,* 128 Ariz. 415, 626 P.2d 145 (App.1981); *State v. Torres,* 127 Ariz. 309, 620 P.2d 224 (App.1980). Division One held that the credit could be allocated to more than one concurrent sentence to achieve the result it concluded was mandated by the statute—to reduce the number of days served in prison by an inmate by the number of days the inmate spent in presentence custody. *See State v. Wallis,* 132 Ariz. 453, 646 P.2d 884 (App.), *vacated,* 132 Ariz. 445, 646 P.2d 876 (1982).

Last year in *State v. Wallis,* 132 Ariz. 445, 646 P.2d 876 (1982), we accepted Division Two's approach. In *Wallis* defendant had committed three separate robberies, but his sentences were concurrent. We said:

We hold that, pursuant to statute, presentence incarceration time may be applied only once, and once applied, may not be applied again. How this will be applied in the case of multiple convictions is up to the sentencing judge. In the instant case, for example, the trial court could have given the defendant credit for the 130 days presentence incarceration to one count of robbery but not to both. The court could have also divided the presentence incarceration between the two robbery sentences, for example, 65 days credit for each of the two convictions. In no event, however, may the credit for presentence incarceration be applied twice.

*Id.* at 447, 646 P.2d at 878.

Upon further reflection, we think that our holding in *Wallis* is incorrect. If our holding in *Wallis* were strictly followed, the results could run afoul of the holdings in *Warde, supra,* and *Sutton, supra.* That holding can also lead to cases such as the instant one, in which the credit is illusory and the effect of the statute is without meaning.

In the case at bar, as the sentence has been imposed, appellant must spend 25 years and 260 days behind bars before he is eligible for parole. This is longer than the people, through the legislature, have determined is necessary to prohibit individuals who have been sentenced to life imprisonment from parole consideration.

We think the remedy is to credit appellant's time spent in presentence custody to each concurrent sentence. This does not grant appellant a windfall. The result will be that the time he must serve in prison before he is eligible for parole will be reduced by the actual number of days spent in presentence custody. *See State v. Thomas,* 133 Ariz. 533, 652 P.2d 1380 (1982) (applying credit for presentence custody against the minimum 25-year portion of the sentence). Stated another way, the term of imprisonment minus the number of days

---

1. Added as § 13–905 by Laws 1977, Ch. 142, § 57, eff. Oct. 1, 1978. Renumbered as § 13– 709 by Laws 1978, Ch. 201, § 104, eff. Oct. 1, 1978.

spent in presentence custody equals the length of incarceration in prison. In this case, appellant's minimum term of imprisonment is 25 years minus 260 days credit for presentence custody which equals 24 years, 105 days to be served in prison before he is eligible for parole.

To the extent our opinion in *Wallis* is inconsistent with this opinion, it is overruled. We note that *State v. Warde, supra,* (credit for presentence custody given on one of two consecutive sentences), and *State v. Sodders,* 130 Ariz. 23, 633 P.2d 432 (App. 1981) (credit for presentence custody should not be given on each consecutive sentence) remain sound law after today's decision.

We have reviewed the record for fundamental error pursuant to A.R.S. § 13–4035 and have found none.

Pursuant to A.R.S. § 13–4037, we modify the sentence to include credit of 260 days on Count I. The judgments of conviction and the sentences are affirmed.

GORDON, V.C.J., and FELDMAN, J., concur.

CAMERON, Justice, dissenting.

I regret that I must dissent.

Just last year we stated:

pursuant to statute presentence incarceration time may be applied only once, and once applied, may not be applied again. How this will be applied in the case of multiple convictions is up to the sentencing judge. In the instant case, for example, the trial court could have given the defendant credit for the 130 days presentence incarceration to one count of robbery but not to both. The court could have also divided the presentence incarceration between the two robbery sentences, for example, 65 days credit for each of the two convictions. In no event, however, may the credit for presentence incarceration be applied twice.

*State v. Wallis,* 132 Ariz. 445, 447, 646 P.2d 876, 878 (1982). Today this court overrules *Wallis* contending that *Wallis* is contrary to the holdings in *State v. Warde,* 116 Ariz. 598, 570 P.2d 766 (1977) and *State v. Sutton,* 21 Ariz.App. 550, 521 P.2d 1008 (1974). First, I do not believe, as the majority opinion contends, that *Wallis,* supra, is contrary to *Warde,* supra, and *Sutton,* supra. In *State v. Warde,* supra, the defendant was sentenced to consecutive terms for two offenses. The court did not give credit for his presentence incarceration. Because the sentences were served consecutively, we held that he must be given credit as to one of the consecutive sentences, but not as to both. We stated:

The consecutive sentences of not less than two and one-half nor more than five years imposed by the trial court on each count are affirmed. By the authority granted us in A.R.S. [§ 13–4037] we modify the sentence in Cause No. CR 93169 to give the appellant credit for presentence incarceration, and the sentence in the above cause number shall date from April 13, 1976.

*State v. Warde,* supra, 116 Ariz. at 601, 570 P.2d at 769. Admittedly, the majority does agree with Warde that credit for presentence custody need be given to only one of the consecutive sentences.

In *State v. Sutton,* supra, the Court of Appeals stated:

In short, we hold that while presentence incarceration may not qualify as "punishment" under A.R.S. § 13–1652, it amounts to an infringement of freedom and deprivation of liberty and when added to the maximum deprivation of liberty allowed by law results in a denial of equal protection guaranteed by the 14th Amendment of the United States Constitution.

*State v. Sutton,* supra, 21 Ariz.App. at 552, 521 P.2d at 1010. Sutton requires only that if a defendant is sentenced to the maximum punishment the statute allows, he must be given credit for presentence incarceration as to that sentence. With this I do not disagree, but I do not read Sutton to require that if the defendant is given two

maximum sentences he must be given pre-sentence credit for both sentences, any more than the defendant would be entitled to presentence credit for both consecutive maximum sentences.

The position of the majority can only add to confusion in sentencing, particularly as is often the case the defendant is "arrested" for more than one offense at different times, sometimes while in custody on a pre-vious charge, and is then tried and sen-tenced at different times.

In short, I do not believe the statute or our rules require the judge to give "two for one" credit for presentence incarceration.

HOLOHAN, Chief Justice, concurring.

I concur in the dissent of Justice Camer-on.