707 P.2d 956

The STATE of Arizona, Appellee,

v.

Jay Almond THOMPSON, Appellant.

No. 2 CA–CR 3240.

Court of Appeals of Arizona,
Division 2, Department A.

May 30, 1985.

Rehearing Denied July 8, 1985.

Review Denied Oct. 17, 1985.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee.

Alex A. Gaynes, Tucson, for appellant.

## OPINION

HOWARD, Judge.

Appellant was indicted on a charge of first-degree murder and on two counts of child abuse. The victims were the children of appellant's live-in girlfriend. Steven, 18 months old, died of his injuries. "Junior",

2 years old, survived. With respect to Steven, a jury found appellant guilty of manslaughter, a class 3 felony, and of reckless child abuse, also a class 3 felony. With respect to Junior, the jury convicted appellant of negligent child abuse, a class 6 felony. The court sentenced appellant to the presumptive 5 years in prison on each offense for the manslaughter and child abuse of Steven, to run concurrently, and to the presumptive 1.5 years for the abuse of Junior, to be served consecutively to the two concurrent 5-year terms. Our disposition of this appeal turns upon the admissibility of certain out-of-court statements made by appellant, by Junior, and by the victims' sister and father. We affirm but remand for resentencing because the trial court failed to state its reasons for imposing consecutive sentences.

At the time of the incidents, appellant's girlfriend and her three children had lived with appellant for approximately 5 months. A babysitter cared for the children during the day while both adults were away at work. Appellant was alone with the children each night until after midnight while their mother worked a second job as a cocktail waitress. On the evening of November 5, 1982, appellant was alone in his mobile home with the three children. Shortly after midnight on November 6, 1982, paramedics responded to a call at appellant's trailer and discovered appellant kneeling in the open doorway of his home attempting to resuscitate the dying Steven, who exhibited a distended belly, extremely pale skin, and agonal breathing. When asked briefly what had happened, appellant told the paramedics that the baby had suffered a seizure or convulsion of some kind. Although resuscitation efforts continued while the baby was being transported to the hospital and for a time thereafter, the child was pronounced dead approximately one hour after his arrival at the hospital. An autopsy later revealed a total of 26 small injuries, mainly recent bruises, all over the child's body. All appeared to have been inflicted simultaneously and some looked like the imprints of human fingers or knuckles. Most of the bruises were in areas where they would not be expected to be found from accidental injuries. There was an injury to the upper lip consistent with being punched. The actual cause of death was tears in certain internal organs which caused such massive bleeding that half the child's total blood supply had accumulated in the abdomen. The time of infliction of the injuries was estimated at between one and four hours before death. The severe internal injuries were consistent with being kicked.

When resuscitation efforts failed, medical personnel notified police that they had a case involving an unknown cause of death. After calling in the identification unit to photograph the child's body, and after making certain inquiries at the hospital, police officers Cormier and Batelli drove to appellant's trailer to further investigate Steven's death and to check on the welfare of the other children. When they arrived, the officers knocked on the door and found that appellant had returned from a brief visit to the hospital emergency room and was again alone with the remaining children. Appellant consented to having them enter to talk about Steven's death. In the living room, Officer Cormier initiated a dialogue with appellant while Officer Batelli moved to another part of the dwelling to see about the children—Junior and his older sister Mamie. In response to Officer Cormier's inquiry about what had happened to Steven, appellant stated that from the living room, at a late hour, he had heard the baby squirming or choking in the bedroom, and that when he went to check he saw that the child had stopped breathing. He then allegedly carried the child out to the hallway and into the living room, tripped and fell, but twisted his body before striking the floor so as to fall under the baby rather than on top of him.

While appellant was relating his story to Cormier, Batelli was in the bedroom with Mamie and Junior, speaking with Junior about several bruises he observed on the boy's body. Junior told the officer that appellant had hit him with a belt, and pointed to a belt hanging on the wall nearby.

Batelli then called by portable radio for Sergeant Perez, his supervisor, to respond to appellant's address. When Batelli returned to the living room he asked appellant about Steven's death and was told essentially the same story that appellant had told to Cormier. Batelli then asked appellant about Junior's bruises. Appellant stated that he had struck Junior with the belt two days earlier and that he had lost his temper but had "caught himself." At some point during that conversation, Sergeant Perez arrived. Eventually, Sergeant Perez decided to arrest appellant for child abuse regarding Junior. Until the arrest, none of the officers had informed appellant of his *Miranda* rights.

## PRELIMINARY DISCUSSION

■ Before we discuss the hearsay statements, some observations are in order. In the trial court, appellant's objections to the statements were confined to his contention that they were hearsay, although he did object that his right to confrontation was being violated when the state offered the testimony of the two-year-old Junior. Appellant has *not* raised a denial of his confrontation rights as an issue on appeal. The right to object to testimony which violates the right of confrontation guaranteed by the Sixth Amendment to the United States Constitution can be waived by failure to object, and we shall not address the confrontation issue sua sponte as fundamental error. See *State v. Viertel,* 130 Ariz. 364, 636 P.2d 142 (App.1981). However, it is evident from this case, and from others which have come before us that there currently is confusion in the minds of some attorneys and members of the judiciary relative to the interplay between the exceptions to the hearsay rule and the Sixth Amendment right to confrontation. The fact that certain evidence meets a firmly rooted hearsay exception does not and we stress *does not,* mean that the Sixth Amendment right to confrontation is satisfied. This is the lesson to be learned from *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). We quote from the pertinent part of the opinion:

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. [Citations omitted.]

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' [Citation omitted.] The principle recently was formulated in *Mancusi v. Stubbs:* [408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) ]

'The focus of the Court's concern has been to insure that there "are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant," [citation omitted] and to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement," [citation omitted]. It is clear from these statements, and from numerous prior decisions of this Court, that even though the witness be unavailable his prior testimony must bear some of these "indicia of reliability." ' [Citation omitted.]

The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' [Citation omitted.] This reflects the

truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' [citation omitted] and 'stem from the same roots,' [citation omitted]. It also responds to the need for certainty in the workaday world of conducting criminal trials.

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." 100 S.Ct. at 2538–39.

We must add in the way of further explanation, as *Ohio v. Roberts* points out, that unavailability is not necessary to satisfy the Sixth Amendment right to confrontation when the utility of trial confrontation is remote. See *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). We note that the record here does not disclose that either Junior, Mamie, or Charles Johnson was unavailable for trial. We further observe that unavailability implies a good faith effort to locate the witness. Of course, if the state makes the witness available to the defendant for cross-examination, there is no longer any confrontation problem. We now address the issues that were presented to us.

## THE MIRANDA ISSUE

■ Appellant argues that because the inquiry was focused and because appellant was the only logical suspect with respect to both incidents, failure to inform him of his rights resulted in reversible error when the trial court allowed his statements into evidence. We do not agree. Miranda warnings become a requirement only when a defendant is in custody or in fact is not free to leave the place of interrogation, *State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040 (1977) and the circumstances of each case determine whether an individual is in custody for purposes of administering Miranda warnings. *State v. Cruz-Mata,* 138 Ariz. 370, 674 P.2d 1368 (1983). Three objective indicia of custody must be considered: the site of the questioning, whether objective indicia of arrest are present, and the length and form of the interrogation. *State v. Cruz-Mata,* supra. The *Cruz-Mata* court rejected the "focus of the inquiry" factor.

■ Generally, interrogating a person in his home does not create the type of atmosphere to be held of doubtful validity, especially when the questioning is investigatory rather than accusatory. *State v. Hatton,* supra. The record shows that the officers were merely asking appellant for any information that he might have had concerning the death of Steven and the bruises on Junior's body, and not that they were openly accusing appellant of having inflicted any of the injuries. In fact, appellant was not arrested for any offense involving the deceased until later, when the medical examiner determined that death had resulted from massive internal bleeding as a result of severe blunt force blows to the abdominal area. Appellant consented to the officers' entry into his home and supplied an account of the circumstances of Steven's death and of the source of Junior's bruises without being accused of culpability in either case. We do not believe that either the site of the questioning or the form of the questioning had the objective indicia of arrest.

Further, appellant was not subjected to, or threatened with, any form of physical restraint; no handcuffs were used nor was a weapon drawn. As to the length of the questioning, no protracted interrogation took place. The officers testified that their dialogues with appellant lasted no more than fifteen or twenty minutes. Much longer periods of interrogation have passed scrutiny under this test. See *State v. Cruz-Mata,* supra. We see no error in the court's admission of appellant's statements.

## JUNIOR'S STATEMENTS TO POLICE

Appellant argues that the statements made by the two-year-old Junior to Officer Batelli during the initial investigative visit to the mobile home were hearsay and were improperly admitted by the trial court. We agree, but we find that the error was harmless and does not require the reversal of appellant's convictions.

The following testimony by Batelli was admitted over defense counsel's objection:

"I asked the child if he had any bruises on his body and he stated he did and he then showed me the bruises....

\* \* \* \* \* \*

After I looked at all of the bruises on the child's body I asked him how he received the bruises and he stated, *Jay hit me.* I then asked him when did *Jay him him* and he told me that *Jay hits them* after his mother leaves.

I asked him what *Jay hit them* with and he stated the belt. I asked him where the belt was and he showed me the belt hanging on the wall by the entrance to their bedroom." (Emphasis added)

▮ The statements by Junior that "Jay hit me" and "Jay hits them" do not fall within any hearsay exception. Rules 803(1) and (2), present-sense impression and excited utterance require, respectively, immediacy or speech under the stress of nervous excitement. *State v. Barnes*, 124 Ariz. 586, 606 P.2d 802 (1980). There is no indication that Junior, though of tender years, was anything but matter-of-fact in his statements to Batelli. Nor is there any evidence that his remarks were tied to a very recent event.

▮ The test for determining harmless error is "whether there was reasonable probability ... that a verdict might have been different had the error not been committed." *State v. Williams*, 133 Ariz. 220, 225, 650 P.2d 1202, 1207 (1982) (quoting *State v. McVay*, 127 Ariz. 450, 453, 622 P.2d 9, 12 (1980). Disregarding Junior's statement, potent evidence remained to convict appellant of abusing that child.

Photographic evidence showed bruises and welts on Junior's body. Appellant admitted that he had struck Junior two days earlier and that he had lost his temper but "had caught himself." Although an accused may not be convicted on his own uncorroborated confession, only a reasonable inference of the corpus delicti need exist before a confession may be considered. *State v. Gillies*, 135 Ariz. 500, 662 P.2d 1007 (1983). We believe that the photographs showing multiple bruises on Junior's back and thigh in a pattern consistent with the belt's impact are sufficient to establish the corroboration needed to consider appellant's own statement. The corroborating confession is more than enough for a jury to convict, and we see no reasonable probability that but for Junior's statements the verdict might have been different. We therefore affirm the child abuse conviction involving Junior.

▮ Similarly, we find the error harmless with respect to appellant's convictions for the child abuse and manslaughter of Steven. Appellant's account to the police of the baby's traumatic injuries included an admission that appellant was involved, although allegedly only as a result of tripping and falling. The expert medical testimony, however, clearly established that the nature of the injuries was such that they could only have been caused by deliberate blows involving major force, and did not have the implausible origin which appellant's story suggested. Appellant's acknowledgment that he was responsible in some manner for the injuries and the overwhelming expert medical testimony that the fatal injuries were deliberately inflicted more than justify the jury's verdicts against appellant. Error does not require reversal if an appellate court can say beyond a reasonable doubt that it had no influence on the verdict. *State v. Adamson*, 136 Ariz. 250, 665 P.2d 972 (1983), cert. denied, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178; *State v. McVay*, supra. The jury would have found appellant guilty of manslaughter and child abuse without Junior's testimony.

## HEARSAY STATEMENTS ADMITTED AS PART OF DR. MARSHALL'S TESTIMONY

### A. Statement by the child's natural father.

■ At the hospital, after resuscitation efforts were abandoned, one of the emergency room doctors spoke with Steven's natural father, Charles Johnson. Johnson told either Dr. Marshall or Dr. Recheske "that the children had had bruises on them at previous times." This statement, in the form of testimony by Dr. Marshall, was admitted over appellant's objection. Appellant urges that this hearsay is not admissible under Rule 803(4), Rules of Evidence, 17A A.R.S. We disagree. The exception applies to:

> "Statements made for purposes of medical diagnosis or treatment and describing medical history, or *past* or present *symptoms*, pain, or sensations, or the inception or *general character of the cause or external source thereof* insofar as reasonably pertinent to diagnosis or treatment." (Emphasis added)

Johnson's statement describing past symptoms was clearly pertinent to the doctors' diagnosis of the general character of the cause and external source of Steven's injuries because the information was consistent with trauma rather than disease.

### B. Statement by the deceased's sister, Mamie.

■ Dr. Marshall also testified that he had seen Steven at the hospital on another occasion a few months earlier. The baby was treated at that time for a laceration above the left eye. Hospital personnel were apparently told that the child had accidentally fallen off a chair while eating and had struck his head on the table. However, Dr. Marshall further testified that in the hospital waiting room Steven's sister Mamie had told the parent of another child that Steven had been hit by appellant and that the hitting had occurred more than once. Dr. Marshall testified that although he did not rely on the statement in treating Steven's cut, the hospital alerted

Child Protective Services of possible child abuse at that time, based on Mamie's statement, and he later relied on the statement in an attempt to diagnose Steven's fatal injuries. Appellant contends that the portion of the doctor's testimony which related Mamie's statement to the jury was hearsay not within any exception and as such was improperly admitted. We agree.

Mamie's statement involves multiple levels of hearsay. The witness, Dr. Marshall, testified that he had either read it in hospital records or heard it from another doctor, who had heard it from the parent of another patient, who had heard it from Mamie herself. Rule 803(4) is clearly inapplicable here because the statement was not made to medical personnel for purposes of medical diagnosis or treatment, although it may later have been relayed to them by others for those purposes. Assuming arguendo that the statement had been made to medical personnel, the fact that it consisted of an express assignment of fault excludes it under our holding in *State v. Reidhead*, 146 Ariz. 314, 705 P.2d 1365 (1985).

The state offers an array of additional exceptions to the hearsay rule in its attempt to account for each step in the hearsay chain, including family history under Rules 803(19) and 804(b)(4), present-sense impression under Rule 803(1), excited utterance under 803(2), public records and reports under 803(8)(B), and basis of expert opinion testimony under Rule 703. Of these only the last merits consideration.

The state urges that under 703 Mamie's statement was properly admitted through Dr. Marshall's expert testimony as a basis for the formation of his opinion. We disagree. Rule 703 provides:

> "The facts or data in the particular case on which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Dr. Marshall, a pediatrician and "expert" on child abuse, testified that when he treat-

ed Steven for a lacerated forehead three or four months prior to the baby's death he did not rely on Mamie's statement. Instead he decided that the injury was accidental. Although the hospital reported the statement to Child Protective Services, as required by law, the medical diagnosis was not that of child abuse because the nature of Steven's injury appeared to be inconsistent with Mamie's statement. Months later, however, on the morning of Steven's death, Dr. Marshall did consider the statement as a factor in evaluating possible causes of Steven's extensive injuries. On cross-examination he emphasized that child abuse "was the number one diagnosis that we had in our mind [sic] as we left the emergency room that day."

Unlike a lay witness, an expert witness is allowed to testify to facts or data not admissible in evidence, *Continental Bank v. Wah-Ho Truck Brokerage*, 122 Ariz. 414, 595 P.2d 206 (App.1979), if such supportive factual material is of a type reasonably relied upon by experts in the formation of an opinion. *State v. Rupp*, 120 Ariz. 490, 586 P.2d 1302 (App.1978). We do not believe that the prosecution should be allowed to circumnavigate the requirements of Rule 803(4) and *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105 (1983), by the simple expedient of qualifying the doctor as a "child abuse expert." All doctors are potential "child abuse experts", and allowing guilt assessment statements to be admitted through the back door of Rule 703 would mean the unwarranted creation of a special "child abuse" exception to Rule 803(4) and *State v. Jeffers*, supra. The potentially devastating effect of such guilt assessment statements calls for the application of Rule 403, Rules of Evidence, 17A A.R.S. The danger of unfair prejudice substantially outweighs the probative value, and the trial court should have prevented Dr. Marshall from testifying as to Mamie's statement.[1]

We nevertheless find harmless the erroneous admission of Mamie's statement for the reasons previously set forth in considering the effect of Junior's statements on appellant's conviction for child abuse and reckless homicide. Even when we consider the cumulative effect of the admission of Junior's and Mamie's statements, we find beyond a reasonable doubt that had the jury not heard them the verdict would still have been the same.

### RESENTENCING

A.R.S. § 13–708 provides that if the court pronounces consecutive sentences it must set forth in the record its reasons for such sentencing. The trial court in this case did not do so. Accordingly, we vacate the sentences and remand for resentencing. See *State v. Sanchez*, 130 Ariz. 295, 635 P.2d 1217 (1981).

The convictions are affirmed and the cause is remanded for resentencing.

BIRDSALL, P.J., and FERNANDEZ, J., concur.

---

1. This does not mean that the doctor could not have used the statement in coming to his conclusion. Furthermore, should defense counsel, in his cross-examination of a doctor, "open the door", for example, by pressing the doctor on the facts he used in arriving at his opinion, such testimony might be admissible.