NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GILBERTO CRUZ JIMENEZ, *Appellant.*

No. 1 CA-CR 19-0151
FILED 6-2-2020

Appeal from the Superior Court in Maricopa County
No.  CR2016-109865-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Susser Law Firm, PLLC, Chandler
By Adam M. Susser
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

_____

**C A T T A N I**, Judge:

¶1            Gilberto Cruz Jimenez appeals his convictions and sentences for two counts of child molestation and two counts of sexual conduct with a minor.  He argues that his confession to police officers should have been suppressed because it was involuntary and obtained in violation of his *Miranda*[1] rights.  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2            Jimenez lived with the victim and the victim's mother, with whom he was romantically involved, in various apartments from 2004 until the relationship ended in 2007.  During this period, the victim was between about three and six years old.  In 2014, the victim told her grandmother that Jimenez had sexual contact with her on multiple occasions while they were living together.

¶3            Later that year, the victim reported the sexual conduct to the police.  After the victim spoke to a forensic interviewer, two officers went to Jimenez's place of work to speak with him.  The officers arrived and entered an office, which was a double-wide mobile home on a large area of farmland, and informed two workers behind a counter that the officers needed to speak to Jimenez.  The workers called for Jimenez and directed the officers to a room where they could speak with him.

¶4            Jimenez entered the office, and an officer asked Jimenez if he would speak with him.  Jimenez did not verbally respond but followed the officers to the room.  Once Jimenez and the officers entered the room, one of the officers informed Jimenez that he was not under arrest and began to question him.

¶5            The questioning began by going over biographical information to confirm Jimenez's identity.  The officer then informed Jimenez of the victim's allegations and asked Jimenez whether he

_____
[1]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

committed the acts in question. After repeatedly denying any wrongdoing, Jimenez eventually admitted to having sexual contact with the victim. In total, the questioning lasted around 45 minutes.

¶6            After the interview, the officers left Jimenez at work, and he was arrested later that day. The State charged Jimenez with three counts of sexual conduct with a minor and one count of child molestation. Before trial, Jimenez moved to suppress his statements to police, arguing that he should have received *Miranda* warnings and that his statements were obtained involuntarily. The superior court held an evidentiary hearing and denied the motion.

¶7            After a four-day trial, the jury found Jimenez guilty of two counts of sexual conduct with a minor as charged, guilty of child molestation as a lesser-included offense of the third count of sexual conduct with a minor, and guilty of the charged count of child molestation. He was sentenced to consecutive life sentences without the possibility of release on the sexual conduct with a minor counts and to concurrent 10-year sentences on the other two counts. Jimenez appealed, and we have jurisdiction under A.R.S. § 13-4033(A).

## DISCUSSION

¶8            We review the denial of a motion to suppress for an abuse of discretion, considering only the evidence presented at the suppression hearing and viewing the facts in the light most favorable to sustaining the ruling. *State v. Maciel*, 240 Ariz. 46, 49, ¶ 9 (2016).

### I.      *Miranda* **Warnings.**

¶9            Jimenez first argues that the superior court should have suppressed his statements because the officers failed to read him his *Miranda* rights. We disagree.

¶10          "Police are free to ask questions of a person who is not in custody without having to give the person any warnings under *Miranda*." *State v. Zamora*, 220 Ariz. 63, 67, ¶ 9 (App. 2009). However, one must be informed of one's *Miranda* rights once in custody and subject to interrogation. *See id.* at 67–68, ¶ 10. Here, both parties agree that Jimenez was subject to an interrogation intended to elicit an incriminating response, so the *Miranda* issue turns on whether Jimenez was in custody.

¶11          A person is "in custody" for purposes of *Miranda* when his "freedom of action [is] significantly curtailed" and "the environment in

which he [is] questioned present[s] inherently coercive pressures similar to a station house interrogation." *Maciel*, 240 Ariz. at 50, ¶ 13. Determining whether someone's freedom of movement was curtailed depends on whether, under the totality of the circumstances, a reasonable person would have felt free to terminate the encounter and leave. *Id.* at ¶ 14. "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and whether the interviewee was released at the end of the questioning." *State v. Waller*, 235 Ariz. 479, 484, ¶ 10 (App. 2014).

¶12     Here, the superior court did not abuse its discretion by determining that Jimenez was not in custody. First, Jimenez's freedom of action was not significantly curtailed. The officer asked Jimenez to accompany him to the room, and shortly after the beginning of their discussion, he told Jimenez he was not under arrest. *See State v Stanley*, 167 Ariz. 519, 523 (1991) (noting that being told one is not under arrest weighs against a finding of custody); *State v. Carter*, 145 Ariz. 101, 106 (1985) (same). And at no point was Jimenez physically restrained. Only two officers were present at the time of the interview, and although at least one of them wore a gun and badge on his hip, both officers were in plain clothes. *See Maciel*, 240 Ariz. at 52, ¶ 26 ("The police presence was relatively modest . . . . [T]here were never more than three at one time."); *Carter*, 145 Ariz. at 106 (noting that officers not having weapons drawn weighed against a finding of custody). The interview lasted around 45 minutes. *See State v. Spreitz*, 190 Ariz. 129, 143 (1997) (holding that 45-minute detention was reasonable under the circumstances).

¶13     Further, the interview did not contain the inherent coercive pressure indicative of a custodial interrogation. The superior court correctly noted that under some circumstances, a workplace interview may be inherently coercive, but that fact on its own does not require *Miranda* warnings. *See Maciel*, 240 Ariz. at 50, ¶ 17 ("[C]oercion is often lacking when a person is questioned in familiar surroundings."); *State v. Cruz-Mata*, 138 Ariz. 370, 373 (1983) (noting that questioning occurring in a "coercive environment" does not, without more, require *Miranda* warnings). In addition, Jimenez was told that the other workers did not know the reason officers were speaking with him.

¶14     Further weighing against a finding of custody is the fact that the interview was conducted in Spanish, which is Jimenez's primary language. *See Cruz-Mata*, 138 Ariz. at 373. And the interviewing officer did not raise his voice or become argumentative or threatening towards

Jimenez. *See id.* To the contrary, after the interview concluded, Jimenez told the officer he felt like hugging the officer.

**¶15** Jimenez notes that although he repeatedly denied any misconduct with the victim, the officer continued to question him. Jimenez further contends that the officer did not conduct the interview with a general investigatory purpose, but rather to confirm that Jimenez was the specific perpetrator. Although these facts may weigh in his favor, *but see Maciel*, 240 Ariz. at 52, ¶ 28 ("*Miranda* custody does not turn on an officer's undisclosed suspicions about a person's possible guilt."), viewing the totality of circumstances, the superior court did not abuse its discretion by concluding that Jimenez was not in custody and did not require *Miranda* warnings.

## II.    Voluntariness.

**¶16** Jimenez next argues that his statement was involuntarily obtained in violation of his right to due process. We disagree.

**¶17** We review the superior court's finding of voluntariness for an abuse of discretion. *State v. Cota*, 229 Ariz. 136, 144, ¶ 22 (2012). "A confession is prima facie involuntary and the state must show by a preponderance of the evidence that the confession was freely and voluntarily made." *State v. Newell*, 212 Ariz. 389, 399, ¶ 39 (2006) (citation omitted). "In determining whether a confession is voluntary, we consider whether the defendant's will was overcome under the totality of the circumstances." *State v. Boggs*, 218 Ariz. 325, 335, ¶ 44 (2008).

**¶18** Here, the State carried its burden to show Jimenez's confession was freely made. As discussed above, the circumstances surrounding the questioning do not indicate that Jimenez's will was overborne. Jimenez was questioned at his place of work, a location familiar to him, for 45 minutes. The officers did not subject Jimenez to any undue pressure and did not use loud or threatening language. Accordingly, the superior court did not abuse its discretion by determining Jimenez's confession was voluntarily obtained.

**CONCLUSION**

¶19        For the foregoing reasons, we affirm.

