East, Senior District Judge, dissented with an opinion.

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ralph CARREON, Defendant-Appellant.**

**No. 76–3715.**

United States Court of Appeals,
Ninth Circuit.

March 1, 1978.

Samuel G. Jackson, Jr., Asst. Federal Public Defender (argued), Los Angeles, Cal., for defendant-appellant.

Dominick W. Rubalcava, Mark E. Beck, Asst. U. S. Attys. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING and DUNIWAY, Circuit Judges, and EAST,* District Judge.

PER CURIAM:

Our reading of the entire transcript of the trial in this case convinces us that Carreon did not get a fair trial.

First, the principal witness against Carreon was one Yerich, a former employee of Garrett Freight Lines. Certain television sets disappeared from Garrett's custody, and Yerich testified that he and Carreon and another were accomplices in stealing them, Yerich placing the televisions in Carreon's truck, which was at the Garrett dock, and Carreon then taking them to his warehouse. If the jury believed Yerich, Carreon's guilt was established; if the jury believed Carreon and did not believe Yerich, Carreon would be acquitted. Cross-examination of Yerich was crucial, but it was severely and improperly restricted by the court, mostly on its own motion.

Garrett had filed a civil action against Yerich, charging him with theft. However, the court refused to let defense counsel show just what that lawsuit was about:

Q. [By defense counsel]: Mr. Yerich, has Garrett Freight Lines filed a civil suit against you?

[Prosecutor]: Objection.

The Court: The objection is overruled.

Again, ladies and gentlemen of the jury, this goes only to the question of bias and prejudice of this witness and for that purpose alone. It has nothing to do with the guilt or innocence of the defendant. It is to be considered by you only in terms of bias and prejudice as to his position in that lawsuit as opposed to Defendant Carreon.

Have you been sued by Garrett?

The Witness: I have received a subpoena, but that was for the—

The Court: Have you had a suit filed against you by Garrett?

The Witness: Yes, I have.

The Court: All right.

Q. [By defense counsel]: As part of that lawsuit, are you charged with taking—

[Prosecutor]: Objection, your Honor.

The Court: Just a moment, Counsel. That's enough.

(R.T. 241–42.)

The court also refused to permit Carreon to show what promises had been made to Yerich about that lawsuit:

Q. [By defense counsel]: Has anybody from Garrett Freight made you any promises with regard to the disposition of that lawsuit?

[Prosecutor]: Objection, your Honor.

The Court: The objection is overruled.

A. Yes.

Q. What was that promise?

A. If I told them what had happened, not to anybody else, but just to the Garrett Freight Lines attorney, that they would drop the charges.

Q. And at that time—

The Court: Just a moment. That will go out. The jury is admonished to disregard it. That has nothing to do with this lawsuit. Garrett is not a party here, ladies and gentlemen of the jury. Please understand that. Garrett is not a party to this lawsuit. All right.

[Defense counsel]: Your Honor, the witness—

The Court: Just a moment, Counsel. Put a question.

[Defense counsel]: Would the Court please advise me of the grounds—

The Court: Put a question.

(R.T. 243–44.)

Similarly, the court unduly restricted cross-examination about a Federal criminal case charging Yerich with theft from interstate commerce and pending while the present case was being investigated. Yerich was shown a statement that he gave to FBI Agent McGuire, and the following ensued:

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Q. [By defense counsel]: You made that statement approximately nine months after the theft took place; is that right?

A. Yes.

\* \* \* \* \* \*

Q. Did you make other statements about the theft of the television sets?

A. Yes, I did.

\* \* \* \* \* \*

Q. At the time you made the statement to Mr. McGuire, had your federal case gone to trial?

[Prosecutor]: Objection, your Honor.

The Court: The objection is overruled to that question.

The Witness: No, it was just a little while after I was arrested for that.

Q. Was your federal case subsequently assigned to a judge?

A. Yes, it was.

Q. And it had a date set for your trial?

A. Yes.

Q. Did you go to trial?

[Prosecutor]: Objection, your Honor.

The Court: The objection is sustained.

\* \* \* \* \* \*

Q. Did you enter a guilty plea to a charge?

The Court: There is no question about—we will take judicial notice that the case was assigned to Judge Lydick, that Mr. Yerich appeared before Judge Lydick as the record indicates, entered a plea of guilty, and was sentenced as he has testified.

Q. At the time you entered that plea of guilty, did you know what the maximum punishment you would face for that crime—

[Prosecutor]: Objection.

The Court: The objection is sustained.

\* \* \* \* \* \*

Q. After you entered your guilty plea, you were ordered to return to court for sentencing on January 7, 1975.

[Prosecutor]: Objection, your Honor.

The Court: The objection is sustained.

Q. Between the date of your guilty plea and the date of your sentencing, did you meet again with Mr. McGuire?

[Prosecutor]: Objection.

The Court: The objection is overruled.

The Witness: Yes, I did.

Q. At the time you met with Mr. McGuire, you were worried about your sentencing, weren't you?

[Prosecutor]: Objection, your Honor.

The Court: The objection is sustained.

Q. At the time you met with Mr. McGuire, you discussed cooperating with the government in exchange for leniency in your case, didn't you?

[Prosecutor]: Objection, assumes facts not in evidence.

The Court: The objection is overruled.

The Witness: No, I didn't.

Q. You did not discuss—

The Court: That is what he said, Counsel. Now, put a question.

Q. Mr. Yerich, were you aware at that time that the government was still trying to solve the theft of the television sets?

A. Yes.

Q. You knew that there were no charges pending against Mr. Carreon in connection with that case at that time, didn't you?

[Prosecutor]: Objection, your Honor.

The Court: The objection is sustained.

Q. The statements you made to Agent McGuire in December was materially different from the statement you made in September, wasn't it?

A. Yes, it was.

Q. At the time you made the second statement, you knew your first statement hadn't been good enough to justify bringing charges to anyone else to selling the TV—

[Prosecutor]: Objection, your Honor.

The Court: The objection is sustained.

Q. Realizing that you were facing sentence in your other case, you made this new statement; isn't that right?

[Prosecutor]: Objection, your Honor.

The Court: The objection is overruled.

The Witness: Can you repeat the question?

(The question was read by the reporter.)

The Witness: Yes, I talked to my lawyer and he said it would be the best thing for me.

\* \* \* \* \* \*

Q. Was any decision made as to postponing your sentencing until after you had been able to testify for the government against Mr. Carreon?

[Prosecutor]: Objection, your Honor.
The Court: Objection sustained.

Q. Sentencing was postponed more than one time, wasn't it?

[Prosecutor]: Objection, your Honor.
The Court: The objection is sustained.

Q. In May did you meet with Special Agent McGuire and Mr. Rubalcava [the Prosecutor] in Mr. Rubalcava's office?

A. Yes.

Q. Did you meet with them for the purpose of reciting for Mr. Rubalcava your new statement in connection with this case?

A. Yes.

Q. After he heard your statement, did Mr. Rubalcava advise you that if you would testify to that in court, you could be permitted to face sentencing in your other case?

[Prosecutor]: Objection, your Honor.
The Court: The objection is sustained.

Q. It is a fact, is it not, that you were placed on probation?

[Prosecutor]: Objection, your Honor.
The Court: The objection is sustained.

Q. That at the time of your sentencing the government made a recommendation to the court that it place you on probation because you had promised to assist the government in this case.

[Prosecutor]: Objection, your Honor.
The Court: The objection is overruled.
The Witness: Yes.

(R.T. 250–57.)

Second, the court repeatedly interrupted defense counsel's opening statement and her closing argument, although objections had not been made by the prosecutor, made and sustained its own objections to several of defense counsel's questions, and treated counsel in such a way that the jury could readily have inferred that the court had a low opinion, not only of defense counsel, but of Carreon's defense.

What we said in *United States v. Harris*, 9 Cir., 1974, 501 F.2d 1, is a good description of what happened in this case.

A thorough review of the record convinces us that the trial judge overstepped the bounds of judicial propriety by excessively interjecting himself into the proceedings below.

\* \* \* \* \* \*

Aside from the limitations that the court placed on defense counsel during the cross-examination, the trial judge often came to the aid of the prosecutor by interrupting defense counsel and by participating unduly in the trial. . . . Substantially all of the trial court interruptions, intentionally or otherwise, aided in the prosecution.

\* \* \* \* \* \*

Throughout the trial the court interrupted defense counsel, prevented defense counsel from pursuing evidentiary arguments, and abruptly ordered defense counsel to continue the interrogation of witnesses without explaining its various evidentiary rulings. The court's unusual manner created an atmosphere in which an objectively fair trial could not be conducted. (*Id.* at 9, 10, 11, fn. 20)

*See also, Davis v. Alaska*, 1974, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347; *United States v. Rodriguez*, 9 Cir., 1971, 439 F.2d 782, 783–84.

The judgment is reversed and the case is remanded for a new trial.

EAST, Senior District Judge, dissenting:

I respectfully dissent from the conclusion reached by the majority.

I conclude that the majority has too narrowly viewed the range of the District Court's judicial discretion in the field of

cross-examination as to bias of prosecution witnesses. The jury was well apprised of Carreon's participation in the crime charged against him and for which he was previously convicted and sentenced to probation. Furthermore, the District Court fully admonished the jury that Yerich's testimony must be received with caution and weighed with great care, and that the circumstance of Yerich's prior conviction may be considered in determining the credibility to be given Yerich.

While the District Court did at times interrupt defense counsel and interpose its own questions to witnesses, I do not conclude that the District Court's trial participation deprived Carreon of reasonably effective defense counsel.

I believe that Carreon received a fair, if not a perfect, trial on the charge.

Sneed, Circuit Judge, concurred in the result and filed opinion.