IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

DAVID J. WALLER,
*Appellant.*

No. 2 CA-CR 2013-0315
Filed August 29, 2014

---

Appeal from the Superior Court in Pima County
No. CR20113873001
The Honorable Jane L. Eikleberry, Judge
The Honorable Sarah R. Simmons, Judge

**AFFIRMED**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Jonathan Bass, Assistant Attorney General, Tucson
*Counsel for Appellee*

Natasha Wrae, Tucson
*Counsel for Appellant*

---

**OPINION**

Judge Espinosa authored the opinion of the Court, in which Chief
Judge Eckerstrom and Judge Howard concurred.

---

ESPINOSA, Judge:

¶1 After a jury trial, appellant David Waller was convicted of aggravated assault with a deadly weapon or dangerous instrument and was sentenced to a mitigated prison term of five years. On appeal, he argues the trial court erred by failing to suppress his pretrial statements and his in-court identification, and by denying his motion for new trial. He also contends the court committed fundamental error by precluding evidence of the nature of the victim's prior felony conviction and denying his motion for change of judge.

**Factual and Procedural Background**

¶2 "We view the facts in the light most favorable to sustaining the conviction[]." *State v. Robles*, 213 Ariz. 268, ¶ 2, 141 P.3d 748, 750 (App. 2006). One evening in October 2011, J.C. was working on transforming his residence into a "haunted house" for Halloween. To add to the effect, he set up three outside speakers and played rock music. Waller, a neighbor, walked to J.C.'s home to request that the music be turned down. He also brought a handgun, intending to "scare" J.C. "because he did not believe that he was going to turn down the music."

¶3 J.C. was standing in the driveway of his residence when Waller approached him from behind, tapped him on the shoulder, and asked him to turn down the music. J.C. responded, "Sure, not a problem," and "started to turn around and go into the garage to turn the music down." As he turned, Waller again tapped him and repeated his request. J.C. said, "Yes, I was going to turn the music down." Waller "glared" at J.C., and with the back of his hand hit him in the face and "flicked" his ball cap off his head. J.C. picked up his cap and protested, saying: "Sir, you don't have to come over here acting like that. I was going to turn the music down." As J.C. spoke, Waller pressed a black handgun "straight in [his] gut."

¶4 J.C. raised his hand and backed up, saying, "I will just turn the music off. I will . . . just kill the music period." He went into his garage and did so. Waller then left, and J.C. called 9-1-1. Waller was subsequently arrested, convicted, and sentenced as

described above. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## Suppression of Statements

**¶5** Waller first argues the trial court should have suppressed statements he made to sheriff's deputies at his residence the day following the incident because they were made as part of a two-stage custodial interrogation technique prohibited under *Missouri v. Seibert*, 542 U.S. 600, 611-13 (2004). We review the denial of a motion to suppress evidence for an abuse of discretion. *State v. Peterson*, 228 Ariz. 405, ¶ 6, 267 P.3d 1197, 1199 (App. 2011). In our review, we look only to the evidence presented at the suppression hearing and view it in the light most favorable to sustaining the court's ruling, *State v. Gay*, 214 Ariz. 214, ¶ 4, 150 P.3d 787, 790 (App. 2007), deferring to the court's determination of facts and witness credibility but reviewing de novo its legal conclusions, *State v. Gonzalez-Gutierrez*, 187 Ariz. 116, 118, 927 P.2d 776, 778 (1996).

**¶6** The sole witness at the suppression hearing was Pima County Sheriff's Deputy Hernandez. He testified that the day following the incident, he and another deputy, both in uniform, went to Waller's residence. After Waller answered his front door, the officers stood outside his doorway and explained they were investigating a "loud-music incident" and "wanted to get more information as far as his side of the story, to what happened."

**¶7** After first denying that any "incident" had occurred, Waller told the deputies he would apologize to J.C. for what had happened. He explained he had been drinking and upon hearing loud music, "had gone over there . . . and asked him to turn the music down." Not believing J.C. "was going to listen to him," Waller admitted displaying a handgun but denied pointing it at J.C. Hernandez testified the conversation at the doorway lasted about seven minutes. Following Waller's admission, Hernandez read him the *Miranda*[1] warnings, asked if he understood his rights, and placed

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

him in the back seat of a patrol car where he asked more questions about the incident and recorded the interview.

¶8        Although Waller sought to suppress both his pre- and post-*Miranda* statements, the trial court ruled them admissible, finding he was not in custody when he spoke to the deputies prior to the *Miranda* warning and that he had waived his rights as to the statements made afterwards.

¶9        *Miranda* warnings serve to "protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." *Maryland v. Shatzer*, 559 U.S. 98, 103 (2010), *quoting Miranda*, 384 U.S. at 467. The advisement is intended to "preserve the privilege during 'incommunicado interrogation of individuals in a police-dominated atmosphere,'" *Illinois v. Perkins*, 496 U.S. 292, 297 (1990), *quoting Miranda*, 384 U.S. at 445, and is aimed at protecting against the "danger of coercion [that] results from the interaction of custody and official interrogation." *Id.* *Miranda*'s protections, however, "apply only to custodial interrogation." *State v. Smith*, 193 Ariz. 452, ¶ 18, 974 P.2d 431, 436 (1999); *State v. Zamora*, 220 Ariz. 63, ¶ 9, 202 P.3d 528, 532 (App. 2009) ("Police are free to ask questions of a person who is not in custody without having to give the person any warnings under *Miranda*."). "Custody" as used in *Miranda* "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012).

¶10      In determining whether an interrogation is custodial, we look to "the objective circumstances of the interrogation, not . . . the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994). Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and whether the interviewee was released at the end of the questioning. *Howes*, 132 S. Ct. at 1181, 1189. "'[T]he ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Stansbury*, 511 U.S. at 322, *quoting California v. Beheler*, 463 U.S. 1121, 1125 (1983).

¶11    Here, two uniformed deputies contacted Waller at his residence, stood outside his front door, and inquired generally about the incident.  *See State v. Thompson*, 146 Ariz. 552, 556, 707 P.2d 956, 960 (App. 1985) (normally no custodial interrogation when person questioned at home); *cf. United States v. Craighead*, 539 F.3d 1073, 1085-89 (9th Cir. 2008) (custodial interrogation where eight armed law enforcement officers, some in protective gear, entered defendant's house and commenced searching his home, putting him in an unfurnished storage room in back of his house where an armed detective leaned against the closed door that was the only exit).  Deputy Hernandez never directly accused Waller of any crime, nor did he suggest he was doing more than investigating the incident.[2]  *See State v. Mathis*, 110 Ariz. 254, 255, 517 P.2d 1250, 1251 (1974) (*Miranda* not applicable to officer's "clearly neutral, nonaccusatory" questions "in furtherance of proper preliminary investigation").

¶12    The resulting interview lasted only seven minutes.  *See Thompson*, 146 Ariz. at 556, 707 P.2d at 960 (police interview that was not protracted and was "investigatory rather than accusatory" tended to show that the defendant was not in custody).  The deputies did not seek to enter Waller's home, draw their weapons, or in any way restrain him.  *See State v. Cruz-Mata*, 138 Ariz. 370, 373, 674 P.2d 1368, 1371 (1983) (objective indicia of arrest included whether officers had handcuffed defendant or drawn a weapon); *State v. Riffle*, 131 Ariz. 65, 67, 638 P.2d 732, 734 (App. 1981) (*Miranda* warnings not required where "none of the usual indicia of arrest— no handcuffs, no locked doors, no drawn guns, no search of appellant's person or belongings").

¶13    As Waller points out, Deputy Hernandez testified that he did not consider Waller "free to leave" during the encounter, and that Waller "had already been identified . . . [and there was] enough

_____

[2]Waller relies heavily on *State v. Mayes*, 110 Ariz. 318, 518 P.2d 568 (1974), in asserting he was not free to leave during the interview. In *Mayes*, however, the defendant was accused of the crime at the outset when police asked what he was "high on," prior to further questioning.  110 Ariz. at 319, 518 P.2d at 569.

probable cause to arrest him at that moment." The deputy's unexpressed, subjective views, however, were not determinative of whether Waller was in custody. *See Stansbury*, 511 U.S. at 324 (officer's "evolving but unarticulated suspicions do not affect the objective circumstances of an interrogation or interview, and thus cannot affect the *Miranda* custody inquiry"); *see also Cruz–Mata*, 138 Ariz. at 373, 674 P.2d at 1371 ("[C]onfronting an accused with evidence of guilt does not necessarily require administering *Miranda* warnings."). Nor did the existence of probable cause for Waller's arrest automatically necessitate the advisements. *See State v. Kennedy*, 116 Ariz. 566, 569, 570 P.2d 508, 511 (App. 1977).

**¶14** Waller argues, however, that both his pre- and post-*Miranda* statements ought to have been suppressed pursuant to *Seibert*, 542 U.S. at 611-13 (pre- and post-*Miranda* statements suppressed where police elicited custodial confession before providing *Miranda* warnings as such warnings "ineffective in preparing a suspect for successive interrogation, close in time and similar in content"). He maintains: "The manner in which the officer obtained the first statement followed by the immediate request post-*Miranda* for the same statement so the officer could make sure he got the story straight was nothing more than an attempt to undermine the warnings." But because we have concluded the trial court properly found Waller was not in custody and thus not entitled to *Miranda* warnings, we need not address this argument. *See Zamora*, 220 Ariz. 63, ¶ 15, 202 P.3d at 534 (*Siebert* test applicable to extent defendant made statements in response to "custodial interrogation" prior to *Miranda* warnings).

### In-Court Identification

**¶15** Waller next contends the trial court abused its discretion by failing to suppress an in-court identification he asserts was "tainted" by an "unduly suggestive" out-of-court identification. In reviewing a denial of a motion to suppress, we again consider only evidence from the suppression hearing and defer to the trial court's findings of fact unless clearly erroneous. *State v. Garcia*, 224 Ariz. 1, ¶ 6, 226 P.3d 370, 376 (2010). The "ultimate question of the constitutionality of a pretrial identification is, however, a mixed

question of law and fact," for which review is de novo. *State v. Moore*, 222 Ariz. 1, ¶ 17, 213 P.3d 150, 156 (2009).

**¶16** Due process requires that any pretrial identification procedures be conducted in a fundamentally fair manner that secures the suspect's right to a fair trial. *State v. Lehr*, 201 Ariz. 509, ¶ 46, 38 P.3d 1172, 1183 (2002). "Single person identifications are inherently suggestive," *State v. Canez*, 202 Ariz. 133, ¶ 47, 42 P.3d 564, 581 (2002), but are nevertheless admissible "if the identification is reliable notwithstanding the suggestiveness," *State v. Tresize*, 127 Ariz. 571, 574, 623 P.2d 1, 4 (1980). To determine reliability, Arizona courts consider the factors laid out in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). *See Lehr*, 201 Ariz. 509, ¶ 46, 38 P.3d at 1183.

> [T]he factors to be considered [in evaluating the likelihood of misidentification] include the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Id.* ¶ 48 (alterations in original), *quoting Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

**¶17** At the suppression hearing, Deputy Hernandez testified that the evening of the incident, J.C. had told him he had spoken with the suspect "in close proximity . . . approximately about a foot and a half away from him."[3] J.C. described his assailant as "an elderly male, approximately in his sixties or seventies, . . . he had lighter-colored hair, [and wore] a dark jacket." Deputies attempted—but were unable—to locate the suspect at that time.

---

[3]J.C. was present to testify at the suppression hearing, but the court determined it "ha[d] enough information even without that testimony."

¶18 The following day, Deputy Hernandez received a call from J.C., who said some of his neighbors had identified an individual from his description and indicated where that person lived. Based on the neighbors' information, the deputy obtained two photographs of Waller, and J.C. identified him as the man who had accosted him the night before. Hernandez and another deputy then proceeded to Waller's residence to speak with him. Hernandez testified that on contact, he found that Waller matched the physical description given.

¶19 Prior to trial, Waller requested a *Dessureault*[4] hearing, arguing J.C.'s in-court identification was tainted by an "unduly suggestive" pretrial identification process. The trial court granted the hearing but ultimately denied Waller's motion, finding that showing the victim two photos was not unduly suggestive and noting J.C. "had plenty of opportunity to observe [Waller]."

¶20 We agree with the state that "[J.C.'s] identification of Waller was reliable under the totality of the circumstances." *Biggers*, 409 U.S. at 199 (whether pretrial identification reliable based on "totality of the circumstances"). J.C. had stood in close proximity to Waller and provided a detailed description of him to Deputy Hernandez and to his neighbors.[5] And he identified Waller's photograph the day following the incident without hesitation. Thus the trial court did not err in denying Waller's motion to preclude J.C.'s in-court identification.

---

[4]*State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969).

[5]In his reply brief, Waller emphasizes that J.C.'s "description of his assailant changed from the time he called 911 to the time he [met] with the Deputy." He points out J.C. first described his assailant as "a Caucasian male, approximately 55-67 years old, about five-foot-nine, average build, wearing a long-sleeved, blue, denim-type shirt," but later described him as "a Caucasian male, probably in his sixties or early seventies, with light hair, wearing a dark colored jacket." The differences between the descriptions are slight and unremarkable given the circumstances.

**¶21** Furthermore, as posited by the state, any error in admitting the in-court identification would have been harmless. *Dessureault*, 104 Ariz. at 384, 453 P.2d at 955 ("[I]f it can be determined from the record on clear and convincing evidence that the in-court identification was not tainted by the prior identification procedures or from evidence beyond a reasonable doubt that it was harmless, and there is otherwise no error, the conviction will be affirmed."). To determine whether error is harmless, we evaluate whether the tainted evidence supports a fact otherwise established by existing evidence. *See State v. Bass*, 198 Ariz. 571, ¶ 40, 12 P.3d 796, 806 (2000). Here, Waller admitted going to J.C.'s residence to complain about the music, taking a gun, and displaying it to J.C. Consequently, J.C.'s identification was all but superfluous, and had no effect on the verdict.

## Motion for New Trial

**¶22** Waller next argues the trial court erred by denying his motion for new trial.[6] We review such a denial utilizing the abuse of discretion standard. *State v. Hoskins*, 199 Ariz. 127, ¶ 52, 14 P.3d 997, 1012 (2000). Waller presented two bases for his motion, first, that the court acted improperly towards defense counsel by twice interrupting her opening statement, instructing the jury during her closing argument, and setting an order to show cause (OSC) hearing concerning contempt; and, second, that the jury was improperly instructed.

### Court Conduct towards Defense Counsel

**¶23** Waller asserts the trial court's "interactions with defense counsel warrant reversal." In support, he points to two interruptions of his counsel's opening statement:

> **COUNSEL:** But the evidence will show
> that that gun never got pointed at [J.C.].

---

[6]It appears from the record that Waller's motion for new trial was timely; we therefore do not address the state's contention that the motion was filed late, particularly since the state did not raise this issue below where it could have been resolved.

And I will get into that in a little bit about the difference between using a gun to commit a crime or just having a gun as protection for yourself. And as normal citizens, those of us who own weapons, we want to have it so in the event we need it, we have it.

**THE COURT:** Ms. Wrae, this is opening statement. This is a time for you to explain to the jury what you expect the evidence will show rather than to argue the law to them.

**COUNSEL:** Okay, Judge.

**THE COURT:** That's closing.

**COUNSEL:** May I finish this particular concept?

**THE COURT:** Yes.

. . . .

**COUNSEL:** . . . I talked to you a little bit about the standard of proof. It's beyond a reasonable doubt. It's --

**THE COURT:** Ms. Wrae, that's appropriate for closing but not for opening. Confine your comments to what you expect the evidence will show.

**COUNSEL:** Okay, Judge. But I think -- Can I tell them that the State has to prove things beyond a reasonable doubt?

**THE COURT:** They have been told that, and that's appropriate argument for

10

closing. But, no, that's not appropriate for
opening.

Waller notes that neither time had the state lodged an objection, and asserts that "the opening statement [defense counsel] was giving w[as] consistent with the way she has always done her opening statements."

¶24      A trial court has discretion in controlling the scope and extent of an opening statement. *See State v. Burruell*, 98 Ariz. 37, 40-41, 401 P.2d 733, 736 (1965); *State v. Islas*, 119 Ariz. 559, 561, 582 P.2d 649, 651 (App. 1978) ("The extent to which counsel can go in opening statement is within the discretion of the court."). The purpose of the opening statement is to:

> advise the jury of the facts relied upon and of the questions and issues involved, which the jury will have to determine, and to give them a general picture of the facts and the situations, so that they will be able to understand the evidence. Counsel should outline generally what he intends to prove, and should be allowed considerable latitude.

*Burruell*, 98 Ariz. at 40, 401 P.2d at 736. "Opening statements are intended to inform the jury of what the party expects to prove and prepare the jury for the evidence that is to be presented." *State v. King*, 180 Ariz. 268, 278, 883 P.2d 1024, 1034 (1994). They are not, however, the proper forum to argue a case. *Id.*

¶25      The trial court did not hinder defense counsel's ability to make a fair statement regarding the evidence in the case. *See Burruell*, 98 Ariz. at 40, 42, 401 P.2d at 735-37. Rather, it interrupted defense counsel's general assertion that "normal citizens" who own guns did so for protection, a non-issue in this case, and her explication of a legal standard, albeit a pertinent one in any criminal prosecution. As noted by the state, Waller does not show prejudice; "[h]e does not allege that his intended comment on gun ownership was essential to the case or that the jury was inadequately informed

of the standard of proof." Absent any prejudice, we cannot say the court's two interruptions of defense counsel's opening statement constituted reversible error and therefore we need not address whether the trial court provided defense counsel adequate latitude in presenting her opening statement.

¶26 Citing *United States v. Carreon*, 572 F.2d 683 (9th Cir. 1978), Waller further argues that the interruptions, together with the court's setting of an OSC hearing during the second day of trial and its admonition to the jury during defense counsel's closing resulted in "an unfair trial warranting a mistrial."[7] The scheduling of the OSC, which was held outside the presence of the jury, related to defense counsel's violation of an order that a prior conviction of the victim be sanitized. The court's comments during defense counsel's closing argument occurred when the court sustained the state's objection to defense counsel's direction to the jury regarding unanimity on the underlying assault, and gave a contrary instruction.[8]

¶27 In *Carreon*, the trial court repeatedly interrupted defense counsel although the prosecutor had not objected, made and sustained its own objections to several of counsel's questions, and treated counsel in such a way that the jury could readily infer the court had a low opinion of both counsel and Carreon's defense, "creat[ing] an atmosphere in which an objectively fair trial could not be conducted." 572 F.2d at 686. Here, we cannot say that by twice interrupting counsel's opening statement and by instructing the jury during her closing, the trial court "overstepped the bounds of judicial propriety by excessively interjecting [it]self into the proceedings below." *Id.* Further, because the OSC discussion was held outside the jury's presence, it could not have contributed to the

[7]Waller asserts the state failed to address this argument in its answering brief, thereby confessing error. But the argument was made with significantly greater clarity in Waller's reply brief and therefore we do not fault the state for its omission.

[8]This instruction is discussed in detail in the following section.

jury's perception of Waller or his counsel. *See id.* Accordingly, the trial court's actions were neither unfair nor grounds for a mistrial.

**Unanimity of Jury Verdict**

**¶28** Waller next argues a new trial was warranted because the trial court failed to properly instruct the jury that it was required to reach a unanimous verdict on the underlying assault. He asserts that double jeopardy is implicated when either a "duplicitous indictment is charged" or "a criminal offense is alleged that may be committed in more than one way."

**¶29** The indictment alleged Waller "assaulted [J.C.] with a deadly weapon or dangerous instrument, to wit:  a firearm, in violation of A.R.S. []§ 13-1204(A)(2)."  Aggravated assault under § 13–1204(A)(2) consists of the commission of an underlying assault as defined by A.R.S. § 13-1203 with a deadly weapon or dangerous instrument. *See State v. James*, 231 Ariz. 490, n.4, 297 P.3d 182, 185 n.4 (App. 2013).  An assault occurs if a defendant:

1.  Intentionally, knowingly or recklessly caus[es] any physical injury to another person; or

2.  Intentionally plac[es] another person in reasonable apprehension of imminent physical injury; or

3.  Knowingly touch[es] another person with the intent to injure, insult or provoke such person.

§ 13–1203(A).  The three types of assault are distinct offenses with different elements, not merely different manners of committing the same offense. *See State v. Freeney*, 223 Ariz. 110, ¶¶ 16–17, 219 P.3d 1039, 1042 (2009); *see also In re Jeremiah T.*, 212 Ariz. 30, ¶ 12, 126 P.3d 177, 181 (App. 2006) ("[S]ubsections of 13–1203(A) are not simply variants of a single, unified offense; they are different crimes."); *State v. Sanders*, 205 Ariz. 208, ¶ 33, 68 P.3d 434, 442 (App. 2003) ("[T]hese two types of assault ['knowing touching' and 'reasonable apprehension'] are in fact distinctly different crimes.").

¶30      During closing arguments, the state argued that Waller could be found guilty of either the second or the third types of assault.  When defense counsel later told the jury that it must be unanimous on at least one theory of assault to convict Waller, the state objected, and the trial court sustained the objection.  The court then stated:

> Members of the jury, you are instructed that you do not have to be unanimous on which of the three descriptions under that assault. . . .  And you don't have to be unanimous—if you found that there's an assault, you folks don't have to be in unanimous agreement as to whether it's paragraph 1, 2 or 3, . . . .  [Y]ou don't have to be unanimous as to whether it's No. 2, that he intentionally put another person in reasonable apprehension of immediate physical injury, or whether it's No. 3, that he knowingly touched another person with the intent to injure, insult or provoke that person.  That does not have to be unanimous.

The court further denied defense counsel's request to use a special verdict form to indicate which type of assault, if any, the jurors could find Waller guilty of committing.

¶31      The state characterizes Waller's argument as one of duplicitous indictment and argues it has been forfeited for all but fundamental, prejudicial error, citing *State v. Paredes-Solano*, 223 Ariz. 284, ¶ 6, 222 P.3d 900, 903 (App. 2009) (failure to object to indictment at least twenty days before trial forfeits objection absent fundamental error).  A duplicitous indictment "charges two or more distinct offenses in a single count." *State v. Barber*, 133 Ariz. 572, 576, 653 P.2d 29, 33 (App. 1982); *accord State v. Anderson*, 210 Ariz. 327, ¶ 13, 111 P.3d 369, 377 (2005).  For an indictment to be duplicitous, the error must be apparent from the language of the charging document itself; it does not depend on the evidence admitted at

trial. *See State v. Butler*, 230 Ariz. 465, ¶¶ 13–14, 286 P.3d 1074, 1079 (App. 2012).

**¶32**      Waller's indictment referred to only one criminal act, a single aggravated assault against an individual victim. Whether the charge implicated more than one subsection of the assault statute cannot be determined by analysis of the indictment alone, but rather depends on the evidence and theories presented at trial. That is, the indictment did not allege two distinct offenses; it described a single offense, assault with a deadly weapon, without specifying how it was committed or its particular elements. The indictment, therefore, was not duplicitous.[9] *See State v. Klokic*, 219 Ariz. 241, ¶ 11, 196 P.3d 844, 846 (App. 2008).

**¶33**      Waller appears to suggest, however, that his charge was duplicitous, and he contends he was erroneously denied a special verdict form because the trial court did not believe it was required. A duplicitous charge exists "[w]hen the text of an indictment refers only to one criminal act, but multiple alleged criminal acts are introduced to prove the charge." *Klokic*, 219 Ariz. 241, ¶ 12, 196 P.3d at 847. A potentially duplicitous charge need not be remedied before trial. *Id.* ¶ 14; *Anderson*, 210 Ariz. 327, n.3, 111 P.3d at 378 n.3 ("When the basis for a duplicity objection is not learned until trial, a prompt objection at that time is timely."). If the evidence at trial renders the charge duplicitous, the appropriate remedy is to "require 'the state to elect the act which it alleges constitutes the crime, or instruct the jury that they must agree unanimously on a specific act that constitutes the crime before the defendant can be

---

[9] Although not duplicitous, the indictment could be characterized as vague or indefinite because it did not specify the nature of the underlying assault. Consequently, the indictment could have been challenged through a motion for a more definite statement. *See* Ariz. R. Crim. P. 13.2(a). But because Waller did not raise this issue by motion as required by Rule 16.1(b) (motions must be made twenty days prior to trial), he has waived any claim for relief based on any defect in the indictment. *See* Ariz. R. Crim. P. 13.5(e); *State v. Puryear*, 121 Ariz. 359, 362, 590 P.2d 475, 478 (App. 1979).

found guilty.'" *Klokic*, 219 Ariz. 241, ¶ 14, 196 P.3d at 847, *quoting State v. Schroeder*, 167 Ariz. 47, 54, 804 P.2d 776, 783 (App. 1990) (Kleinschmidt, J., concurring). The failure to take such measures to eliminate the risk of a non-unanimous verdict constitutes error. *State v. Kelly*, 149 Ariz. 115, 117, 716 P.2d 1052, 1054 (App. 1986); *see also State v. Davis*, 206 Ariz. 377, 390, ¶ 61, 79 P.3d 64, 77 (2003) (holding that "the resulting risk that the jury returned a non-unanimous verdict constituted error").

¶34 Because a defendant has the right to a unanimous jury verdict in a criminal case, *see* Ariz. Const. art. II, § 23, "[a] violation of that right constitutes fundamental error," *Davis*, 206 Ariz. 377, ¶ 64, 79 P.3d at 77. Thus, the trial court erred here by not requiring a unanimous verdict on the underlying assault. But not every error requires reversal. *Kelly*, 149 Ariz. at 117, 716 P.2d at 1054. "To constitute reversible error, the defendant must have been prejudiced by it when considered in conjunction with all the evidence in the case." *Id.* If the defendant suffers no prejudice from the duplicitous charging, his conviction need not be reversed. *See State v. Petrak*, 198 Ariz. 260, ¶ 28, 8 P.3d 1174, 1182 (App. 2000).

¶35 At trial, Deputy Hernandez testified Waller said he had gone to J.C.'s residence because "he wanted the music turned down," and had taken the handgun with him "because he did not believe [J.C.] was going to listen to him." J.C. testified that after Waller asked for the music to be turned down, Waller hit him in the face, knocking off his ball cap, and pushed a gun "in[to his] gut." J.C.'s testimony was corroborated by his son, who testified he saw Waller "stick something in [his] dad's gut." Another neighbor who witnessed the incident from his car, testified he saw one man "put [his] hand . . . out toward the gentleman's abdomen area, kind of in the center" and "at that point . . . walk[] away."

¶36 Waller's defense was that he had just "showed" or "presented" the gun to J.C. and did not point it at him. He asserted at trial, and now on appeal, that he had not intended to scare J.C., but only wanted the music turned down. The evidence shows, however, that Waller confronted J.C. about the music; displayed a gun to coerce J.C. to acquiesce; struck J.C.'s face; and threatened him by pressing the gun to J.C.'s body. These facts amply support a jury

16

finding that Waller "[i]ntentionally plac[ed] another person in reasonable apprehension of imminent physical injury" pursuant to § 13-1203(A)(2). Moreover, the nature of the charge ensured that no juror who convicted Waller based on a belief that he had touched J.C. with a gun could reasonably have acquitted him of intentionally placing J.C. in reasonable fear of imminent physical injury under the circumstances. In other words, any juror who believed Waller pressed the barrel of his gun to J.C.'s body, committing assault by touching under § 13–1203(A)(3), logically must have found Waller caused J.C. "reasonable apprehension of imminent physical injury," pursuant to § 13–1203(A)(2). Thus, even had the trial court provided the requested special verdict form, the jury would have found Waller guilty of assault under § 13-1203(A)(2); and he therefore was not prejudiced by the duplicative charging. *See State v. Payne*, 233 Ariz. 484, ¶ 90, 314 P.3d 1239, 1264 (2013) (defendant not prejudiced by duplicative charges of child abuse, failing to feed and failing to seek medical attention, when no reasonable jury could have found defendant not guilty of failing to seek medical attention).

### Preclusion of Evidence of Victim's Prior Convictions

**¶37**　　　　Waller contends the trial court committed fundamental error by denying him the right to impeach J.C. with the nature of a prior conviction. Before trial, the state moved to preclude J.C.'s three prior felony convictions, two that occurred in the 1980s and a third from 2003.

**¶38**　　　　At a hearing, the trial court permitted only the 2003 conviction to be introduced at trial if "sanitized," finding the "others . . . too old." It stated: "So the only question that can be asked is whether the victim has been convicted of a felony. But that can be asked." The court then asked defense counsel if she had "any objection to that," and counsel responded, "No, Judge. I believe that was exactly what I was looking for."

**¶39**　　　　Waller asserts that "fundamental error occurred when the nature of the alleged victim's prior conviction and his ability to properly cross-examine the alleged victim with that prior conviction was precluded by the Trial Court." Rule 609(b), Ariz. R. Evid., limits the use of a conviction for impeachment if more than ten years have

passed since the witness's conviction or release from confinement, whichever is later. Such evidence is admissible, in relevant part, only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." *Id.* Sanitizing prior convictions in connection with their introduction at trial under Rule 609 is permitted. *See, e.g., State v. Beasley*, 205 Ariz. 334, ¶¶ 19-23, 70 P.3d 463, 467-68 (App. 2003).

**¶40**        As the state acknowledges, the trial court did not make "specific findings under Rule 403[,] balancing the probative value of the conviction against its prejudicial effect, as required by Rule 609." Waller, however, neither requested the court make specific findings nor objected to its not doing so. A defendant who fails to request express findings concerning a Rule 403 determination waives any allegation on appeal that the court erred by not making such findings. *In re Commitment of Jaramillo,* 217 Ariz. 460, ¶ 18, 176 P.3d 28, 33 (App. 2008). Further, reversal is not warranted based on lack of findings when "it is clear the necessary factors were argued, considered, and balanced by the trial court as part of its ruling." *State v. Beasley,* 205 Ariz. 334, ¶ 15, 70 P.3d 463, 466 (App. 2003); *see also Salt River Project Agric. Improvement & Power Dist. v. Miller Park, L.L.C.,* 218 Ariz. 246, ¶¶ 17–18, 183 P.3d 497, 501 (2008) (although record of Rule 403 determinations should be made, failure to do so not necessarily reversible error). Here, the court considered both parties' arguments on the issue prior to trial. Given that the felony was approximately ten years old[10] and defense counsel stated she was satisfied with the court's ruling, we cannot say the court erred in limiting evidence of J.C.'s 2003 conviction, much less that the error was fundamental.

## Motion for Change of Judge

**¶41**        Finally, Waller contends the denial of his motion for change of judge constituted fundamental error necessitating reversal. As noted above, during trial the court scheduled an OSC

---

[10]J.C. was arrested for second degree burglary of a residence on May 12, 2003, and was sentenced August 19, 2003. The record is silent as to any period of confinement.

hearing to address defense counsel's disregard of the court's ruling concerning J.C.'s 2003 conviction. The following month, defense counsel filed a Motion to Disqualify Judge in her contempt proceedings and several days later Waller filed a Motion for Change of Judge for Cause before a hearing on his motion for new trial. The hearing on the motions was held in June 2013 before a different judge. That judge granted the motion for change of judge for purposes of the contempt hearing only and denied the motion for change of judge with respect to Waller's motion for new trial.

¶42 Waller acknowledges this issue was not raised in the trial court and requests it be reviewed for fundamental error. He argues the denial of his motion constitutes such error because his motion pursuant to Rule 10, Ariz. R. Crim. P., involved a different analysis than his counsel's motion under Rule 33, Ariz. R. Crim. P. And he asserts the "error was further aggravated by the fact that [his] counsel . . . was not permitted to argue at the hearing." He maintains the errors "caused him prejudice in that he was denied his right of effective cross-examination and he was denied his right to effective assistance of counsel to argue his position to be granted a change of judge."

¶43 Error is fundamental only when it reaches the foundation of a defendant's case, takes from him a right essential to his defense, and is error of such magnitude that he could not possibly have received a fair trial. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). Under this standard, Waller bears the dual burden of proving that fundamental error occurred and that it prejudiced him. *See id.* ¶ 20. Waller asserts only that "[w]ithout a change of judge[, defense] counsel was forced to continue to appear before Judge Eikleberry in spite of the perceived animosity." But Waller presents no argument that had his motion been granted, the outcome of his case would have been different. *See State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (insufficient argument waives claim on review). We therefore consider this issue no further.

## Disposition

¶44      For the foregoing reasons, Waller's conviction and sentence are affirmed.