NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ROBERT JOHN ADKINS, *Appellant.*

No. 1 CA-CR 15-0245
FILED 5-12-2016

Appeal from the Superior Court in Mohave County
No. S8015CR201400015
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

Law Office of David Michael Cantor, PC, Phoenix
By Stephen S. Garcia
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Maurice Portley and Judge Patricia K. Norris joined.

---

**T H O M P S O N**:

¶1         Robert John Adkins (defendant) appeals from his convictions and sentences for second degree murder and vulnerable adult abuse.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2         Defendant and the male victim were roommates and both in their early 50s.  Because the victim's deteriorating health impacted his mobility in the latter part of 2013, defendant became, by default, his roommate's "caregiver."  And defendant complained about his increasing responsibilities to the victim's daughter, who lived in California.

¶3         Defendant called 9-1-1 at approximately 7:30 p.m. on December 24, 2013, requesting assistance for the victim, who was not breathing and "might be dying."  While speaking with the dispatcher, defendant mentioned that the victim was in a fight with his cousin, and stated that when he returned home he discovered the victim on the shower floor in the bathroom.

¶4         Medical personnel and police officers arrived quickly.  Officer Oktay noticed that there was "blood everywhere" in the residence, including on the walls, the washer and dryer, and defendant's pants.  And inside the dryer, officer Oktay noticed what appeared to be blood-stained sheets and pillows.  Subsequent DNA analysis revealed the presence of the victim's blood on defendant's shoes.

¶5         Defendant told officer Oktay about the victim's on-going medical issues, such as high blood pressure, dementia, and hemiplegia resulting from a prior stroke.  Defendant explained that the victim had fallen in the bedroom four days earlier and hit his head on a television causing it to break, and the television was subsequently moved to the garage.  Officer Oktay proceeded to the garage and observed a television there, but it did not have blood on it, and it did not appear to have been washed or wiped down.

¶6          Officer Oktay observed the victim laying in the shower and bright red blood in the bathroom.  The victim's eyes were swollen, and bruises covered his lifeless "cool-to-the-touch" body.    Defendant mentioned that he had earlier attempted to get the victim into the shower, but he said nothing about the victim falling in the bathroom.   And, although he had telephoned the victim's daughter in the past, defendant never attempted to call her after the fall or to tell her that he had died.

¶7          Although the victim's death was suspicious, defendant was not brought in for further questioning and was not arrested that evening.  A supervising officer at the scene, concluded that, the medical examiner's report would be necessary to determine whether the death was the result of a criminal act.

¶8          Two days later, the medical examiner opined that the victim died of "bilateral tension pneumothorax . . . due to blunt force trauma of the chest due to assault."   The autopsy revealed serious recent injuries, including twenty-seven displaced rib fractures.  Some of the ribs were broken in more than one place, resulting in nine flail segments, which are pieces of fractured ribs "that just kind of float there" when a person breathes, resulting in significant pain and the inability to take a deep breath.  Several of the fractured ribs punctured the victim's lungs, causing them to collapse.  According to the medical examiner, the victim's injuries were definitely not the result of a fall, nor were they consistent with a television set falling on the victim; rather, the victim appeared to have been repeatedly stomped on and kicked.  The medical examiner estimated the victim could have survived thirty minutes to an hour after sustaining the injuries.

¶9          The next day, detective Gilbert secured a warrant and searched defendant's home.  However, before the search began, defendant proceeded to the police station "to lodge a complaint" against an officer and to discuss an unrelated dispute he had been having with a local hospital.  Detective Zach spoke with defendant and the conversation eventually turned to the Christmas Eve incident.   Defendant explained he had returned home from an errand and discovered the victim had soiled the bed.  He described how he proceeded to drag the victim to the shower, where, approximately a week before, the victim had fallen face first into the shower step resulting in injuries and copious bleeding.

¶10          After a break in the interview, detective Zach advised defendant of his *Miranda*[1] rights.  Defendant, however, continued to speak

_____

[1]          *Miranda v. Arizona*, 334 U.S. 436 (1966).

with the detective. When asked about the victim's fight with a cousin that defendant referred to during the 9-1-1 call, defendant "seemed like he . . . did not know what [detective Zach] was talking about, and [defendant explained that the victim] had never been in[] a fight with a family member." At some point, detective Fisk took over the interview. Defendant never mentioned during any of his conversations with the police officers that items were missing from his and the victim's home or that there were other indications of intruders who could have murdered the victim.

¶11 A grand jury subsequently indicted defendant for second degree murder, a class 1 felony, and vulnerable adult abuse, a class 2 felony. Subsequently, and after defendant testified in his own behalf, the jury found defendant guilty as charged, and found defendant committed the offenses in an especially cruel manner, an aggravating factor. Defendant unsuccessfully moved for a new trial. After defendant was sentenced to concurrent aggravated prison terms, he filed a timely appeal. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1) (2016), 13-4031 (2010), and -4033(A) (2010).

## DISCUSSION

¶12 Defendant essentially raises three issues on appeal. First, whether the trial court erred in permitting the state to improperly comment on his right to remain silent. Second, whether the court improperly admitted other-act evidence and then failed to give the jury a curative instruction regarding that evidence. Finally, whether a new trial is required because the court failed to give the jury a written copy of instructions when the jury began its deliberations.

### A.    Comment on Defendant's Silence

¶13 Defendant asserts the following portions of trial testimony amounted to an improper comment on his right to remain silent:

Q.  Did he [defendant] tell you anything about anything missing?

[Oktay].  No.

. . . .

Q.  Did he ever say anything to you, during that interview, about intruders in the house, in general?

[Zach]. No.

Q. Did he report that he realized anything had been stolen?

[Zach]. No.

. . . .

Q. Did [defendant] talk to you about anything being missing, or stolen?

[Fisk]. There was nothing. He didn't mention it; no.

**¶14** As defendant properly acknowledges, we review for fundamental error because he did not object to the testimony. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005). To obtain relief under fundamental error review, defendant has the burden to show that error occurred, the error was fundamental and that he was prejudiced thereby. *See id.* at 567-68, ¶¶ 20-22, 115 P.3d at 607-08 (2005).

**¶15** We agree with defendant that a prosecutor generally may not comment on a defendant's post-arrest, post-*Miranda* warnings silence as evidence of guilt. *State v. Mauro,* 159 Ariz. 186, 197, 766 P.2d 59, 70 (1988) (citing *Doyle v. Ohio,* 426 U.S. 610 (1976)). As the United States Supreme Court has repeatedly stated, "*Doyle* rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Wainwright v. Greenfield,* 474 U.S. 284, 291 (1986) (quoting *South Dakota v. Neville,* 459 U.S. 553, 565 (1983).

**¶16** However, there was no fundamental prejudicial error. Defendant testified on cross-examination that he "[doesn't] believe anybody broke into the house . . . [or] anybody else was there." Thus, even if the challenged testimony can be construed as comments on his "silence," and we do not decide that it was, defendant testified in his cross-examination consistently with his description in his direct testimony and with his "silence" during the police investigation. Therefore, any error that may have been caused by the officer's testimony was, at best, harmless and does not warrant a new trial. *See State v. Lopez*, 217 Ariz. 433, 436 n.2, ¶ 12, 175 P.3d 682, 685 n.2 (App. 2008) (concluding that admission of

inadmissible hearsay harmless when cumulative with defendant's own testimony).[2]

¶17 Defendant also summarily asserts, without any authority, that the state "engaged in burden shifting during the entirety of its case, referencing how [defendant] never initially told law enforcement representatives that he thought that [the victim] could have been murdered during the course of a burglary." We could permissibly refuse to address this undeveloped argument. *See State v. Lindner*, 227 Ariz. 69, 70 n.1, ¶ 3, 252 P.3d 1033, 1034, n.1 (App. 2010) (appellate court will not address arguments that are not developed in a defendant's opening brief).

¶18 However, defendant's argument also fails on the merits. In general, the state may comment on a criminal defendant's failure to present exculpatory evidence, so long as the comment is not directed to the defendant's failure to testify. *State v. Sarullo*, 219 Ariz. 431, 437, ¶ 24, 199 P.3d 686, 692 (App. 2008) (noting that [w]hen a prosecutor comments on a defendant's failure to present evidence to support his or her theory of a case, it is neither improper nor shifts the burden of proof to the defendant so long as such comments are not intended to direct the jury's attention to the defendant's failure to testify"). Here, defendant did testify, so the police officers' testimony was not "directed to [his] failure to testify."

### B. Motion for Mistrial: Other-Act Evidence; Burden-Shifting

¶19 Before trial, the court ordered that evidence of defendant's threatening behavior while in a dispute with a local hospital before, and right after, the victim was killed was inadmissible other-act evidence under

---

[2] Defendant also suggests that the court erred in permitting detective Gilbert and an evidence technician to testify that, while they participated in the search of defendant's home, they did not see signs of a break-in, ransacking, or other indicia of a burglary. The testimony, however, is not a comment on defendant's silence, but on the investigation at the house and whether evidence suggested that someone else assaulted and killed the victim. Defendant also implies the court should not have permitted detective Gilbert to testify regarding information defendant failed to provide during the 9-1-1 call, such as defendant's name, "where the call was placed," and the callback number. The testimony he complains about, however, does not come from any police interrogation, and, as a result, the implied argument has no merit.

Arizona Rule of Evidence (Rule) 404(b).[3] At trial, a recording of defendant's interview with detective Zach was played for the jury. Defendant's comments during the interview about his dispute with the hospital were supposed to be redacted, but some of those comments were inadvertently introduced because of technical difficulties.[4] Defendant contents the improperly introduced comments consist of the following: "the lady said I was threatening . . . that's not my proudest moment," "people at hospital, I'm a jerk," and "woman who called . . . threat."[5] Defendant unsuccessfully moved for a mistrial, and did not request a curative instruction despite the court's invitation.[6]

**¶20**        Defendant now argues on appeal that the court erred in denying his mistrial motion. He contends the improperly admitted statements were irrelevant and improper other-act evidence, introduced to prove his propensity to commit the charged offenses. We disagree.

**¶21**        We review for abuse of discretion a trial court's denial of a motion for mistrial based on an unexpected admission of inadmissible evidence. *State v. Doty*, 232 Ariz. 502, 506, ¶ 17, 307 P.3d 69, 73 (App. 2013). "In deciding whether to grant a motion for mistrial after inadmissible testimony is unexpectedly interjected, the trial court should consider '(1) whether the remarks called to the attention of the jurors matters that they would not be justified in considering in determining their verdict, and (2) the probability that the jurors, under the circumstances of the particular

---

[3]        Rule 404(b) generally prohibits evidence of uncharged acts "to prove the character of a person in order to show action in conformity therewith." Ariz. R. Evid. 404(b).

[4]        The precise terms of the stipulation are not in the record on appeal because the parties did not inform the trial court on the record of the agreed-upon terms.

[5]        The court reporter did not record the contents of the exhibit when it was played for the jury, and the exhibit is not in the record.

[6]        To the extent defendant is arguing that the court should have sua sponte given a curative instruction, we disagree given that he has not provided any authority for his position.

case, were influenced by the remarks.'" *Id.* (quoting *State v. Stuard,* 176 Ariz. 589, 601, 863 P.2d 881, 893 (1993)).

**¶22**		In denying the mistrial motion, the court reviewed the inadvertently introduced statements, and specifically found that none of them violated its prior order precluding other-act evidence.[7]  The court also found that none of the "fragments of conversations" were prejudicial because they had no context.  Because we do not have a transcript of what the jury heard, we must presume the record supports the court's findings. *See State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982) ("Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court.").  Furthermore, the court's finding regarding the lack of prejudice resulting from the inadvertent admission of the comments is buttressed by defendant's decision to not request or submit a curative instruction.  Consequently, we find no abuse of discretion.

**¶23**		Defendant also argues the state improperly shifted the burden of proof when, in response to defendant's mistrial motion based on the inadvertently admitted statements, the prosecutor stated:

> The other thing is, and maybe this can be revisited after he testifies; but I'm just as sure as I can be, not having heard him testify yet, it's going to be Katie bar the door after he testifies on direct examination, and a lot of doors are going to be opened to rebuttal to not just these little innocuous things — I mean it's easy for me to say they are innocuous. I understand [defense counsel's] concern, but you know, I think there's going to be a lot more coming in that we had agreed to keep out, because of doors the defendant will open when he testifies.

**¶24**		Moreover, according to defendant, the trial court acknowledged "the shift in burden" when it later advised defendant:

---

[7]		Although the court had precluded other act evidence, the court had not considered the portions of the recorded transcript of the police interview when defendant discussed his dispute with the hospital. Accordingly, there is no basis for defendant's unsupported assertions on appeal that the court "already precluded these portions of [defendant's] recorded interview on Exhibit #63 due to the dangers of how the jury could make impermissible assumptions if it were to consider such testimony."

Now, I also understand you could be sitting there thinking well, yeah, that's fine that you ruled that they couldn't do that, but they have already done that by their inept handling of the interview tape; and I don't have a really great response to that, but you just need to be aware that if you testify and you get into things that I have ruled were inadmissible, they become admissible.

¶25 These comments, made outside of the presence of the jury do not support any notion that the state did not have the burden of proving its case beyond a reasonable doubt. The state, having been informed that the defendant was planning to testify, was merely projecting that defendant could potentially open the door to the "innocuous" statements (and other evidence) should he testify about the hospital dispute. And while the state did not need to make the comment, the statement is inconsequential, given that the court did not deny the mistrial motion on the basis of defendant's potential to testify.

¶26 The court's statement that, "I don't have a really great response to that," does not reflect the court's belief that defendant must testify in order to respond to the inadvertently introduced audio comments. Rather, the statement simply is the court acknowledging it could not respond to its perception that defendant may have believed the state's "inept handling" of the interview tape resulted in the admission of evidence that the parties agreed would not be introduced. Additionally, the court made the comment in response to an apparent conflict because defense counsel informed the court that he was advising defendant not to testify. Because the comments were made outside of the presence of the jury, there was no improper shifting of the state's burden onto defendant. In fact, the jury was subsequently advised that the state had the burden of proving each and every element of each charge beyond a reasonable doubt. Accordingly we find no error.

### C. Copies of Jury Instructions

¶27 The record reflects that the court read the final instructions to the jury, but court staff failed to give jurors written copies of the instructions when they retired to deliberate. The court eventually recognized the problem after it had received two or three notes from the jury requesting the specific instructions for the murder charge's lesser-included crime of manslaughter. The court immediately handed the bailiff copies of the written instructions to give to the deliberating jury. Approximately fifteen minutes later, the jury reached its verdicts. In a motion for new trial,

defendant subsequently challenged the court's failure to timely provide the written instructions to the jury. The court heard argument on the motion and denied it.

**¶28**     Defendant argues that the court's failure to initially give the jury copies of the written instructions amounts to reversible error.[8] We review a court's denial of a motion for new trial for an abuse of discretion. *State v. Waller*, 235 Ariz. 479, 486, ¶ 22, 333 P.3d 806, 813 (App. 2014).

**¶29**     We find no abuse of discretion. Rule 22.1 provides that the "court shall instruct the jury on the law" before deliberations, and the instructions which have been reduced to writing, be made available during deliberations. Ariz. R. Crim. P. 22.1(a). Rule 22.2 provides that the jury shall take the forms of verdict, "copies of written or recorded instructions" as well as their notes and any evidence that the court allows. Ariz. R. Crim. P. 22.2(a-d).

**¶30**     Although the court failed to ensure that each juror had a copy of the written instructions when they left to begin deliberating, the mistake did not cause prejudice. *See* Ariz. R. Crim. P. 22.2(b) (requiring jurors to take "copies of written or recorded instructions" upon retiring for deliberation). The mistake was discovered and remedied before the jury concluded the deliberations.

**¶31**     Defendant speculates that "the damage had been done" by the time the court provided the written instructions, at which point defendant posits "[t]he jury was simply expected to manifest its determinations regarding its verdicts for the respective charges." Defendant muses that "it is unknown if the jury would have rendered unanimous verdicts as to the charges if they were properly provided with written instructions from when they were first excused to deliberate." Such speculation, however, is insufficient to find reversible error. *Cf.*, *State v. Rosas-Hernandez*, 202 Ariz. 212, 220, ¶ 31, 42 P.3d 1177, 1185 (App. 2002) ("The failure to give an instruction is not reversible error unless it is prejudicial to the defendant and the prejudice appears in the record."). Significantly, the jury heard the instructions—which defendant does not contend improperly stated the law—before it deliberated and did not

---

[8]     Defendant asserts that the court "did not take seriously the jury's first request for the instructions" and instead responded to the request "with cynicism and doubt." The allegations are not supported by the record.

return its verdicts until after it had the written instructions and the time to review them. *See People v. Patel*, 851 N.E.2d 747, 757 (Ill. App. Ct. 2006) (finding no plain error where jury instructions read in open court correctly stated the law, but copies were not distributed to the jury until after jury commenced deliberations and jury returned verdicts fifteen minutes thereafter). Furthermore, the unanimity of the verdicts was confirmed when the trial court polled the individual jurors regarding their assent to the verdicts. Consequently, we find no reversible error.

## CONCLUSION

¶32            Because we find no reversible error, we affirm defendant's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama